UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CRAIG M. BALL,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MANALTO, INC., a Virginia corporation, and ANTHONY OWEN, an individual,<br><br>　　　　　Defendants. | Case No. C16-1523 RSM<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL |

## I.　INTRODUCTION

This matter comes before the Court on Plaintiff Craig Ball's Motion to Compel. Dkt. #18. Mr. Ball moves the Court for an order compelling the Defendants to fully answer certain electronically stored information ("ESI") discovery requests with specific search terms, *See* Dkt. #18-1.[1] Defendants Manalto, Inc. and Anthony Owen oppose this Motion, arguing that Plaintiff's requested discovery is overbroad, that they have acted consistent with their discovery obligations, and that the Court should "reject Plaintiff's fishing expedition." *See* Dkt. #26. For the reasons set forth below, the Court GRANTS Plaintiff's Motion.

---

[1] Mr. Ball also requests in his Reply brief that the Court order Defendants to provide explanations under oath related to its discovery searches and preservation of evidence. *See* Dkt. #28 at 4-5.

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL - 1

## II. BACKGROUND

A full background of this case is not necessary for the purposes of this Motion. Defendant Manalto hired Mr. Ball in February 2015, allegedly agreeing to pay him a base salary plus commissions to be determined. Dkt. #1-2 at 3. Mr. Ball's job involved negotiating transactions on Manalto's behalf. He secured contracts with three customers and was allegedly in the "late stages of negotiations" with respect to other customers. *Id*. at 4. Mr. Ball contends he was not paid promised commissions for these deals. Mr. Ball's employment was terminated on July 5, 2016. Dkt. #19 at 1. On September 9, 2016, Mr. Ball filed a Complaint in state court asserting claims for failure to pay wages in violation of RCW 49.52, promissory estoppel, unjust enrichment, and wrongful discharge in violation of public policy against Defendants. Dkt. #1-2. This matter was removed on September 29, 2016. Dkt. #1.

On November 1, 2016, Plaintiff served the discovery requests at issue in this case. Dkt. #20-4. At issue in this Motion are: (a) Request for Production ("RFP") No. 1, which seeks "All documents regarding Manalto's employment of Craig Ball, including but not limited to […] documents that mention Craig Ball, and email messages that mention Craig Ball;" (b) RFP No. 2, which seeks "All email messages to or from Craig Ball;" (c) RFP No. 3, which seeks "All documents regarding Manalto's relationship or contract with Telstra;" (d) RFP No. 4, which seeks "All documents regarding Manalto's relationship or contract with Globe;" (e) RFP No. 5, which seeks "All documents regarding Manalto's relationship or contract with ReadySpace;" (f) RFP No. 6, which seeks "All documents regarding Manalto's relationship or contract with Telenor;" (g) RFP No. 7, which seeks "All documents regarding Manalto's relationship or contract with CenturyLink;" and (h) RFP No. 8, which seeks "All documents regarding Manalto's relationship or contract with Dnet/SiteDart." *Id.* That same day, the parties held the

Rule 26(f) conference and declined to enter the Court's model ESI agreement. *See* Dkt. #20 at 2. The Defendants' responses to Ball's discovery requests were due December 1, 2016.

On November 30, 2016, Plaintiff's counsel spoke with counsel for Defendants and granted Defendants an extension to respond to these discovery requests. Dkt. #20 at 3. In that call, counsel for Defendants indicated that they would propose search terms for producing responsive emails. *Id.* Defense counsel gave the impression that Defendants would produce all responsive documents by the new deadline of December 15, 2016. *Id.* Through early December, 2016, the parties exchanged proposed search terms, with Defendants proposing narrow terms and Plaintiff suggesting broader terms. Defense counsel informed Plaintiff's counsel it would take "approximately 340-380 attorney hours and would cost Manalto approximately $100,000-$120,000 in attorneys' fees to review [the ESI based on Plaintiff's requested set of search terms] for responsiveness, privilege, and confidentiality prior to production." Dkt. #20-9 at 13. Defendants refused to produce the ESI at issue until the parties agreed on search terms, even if that meant missing the deadline of December 15, 2016. Dkt. #27 at 4. Continued discussions made clear that the parties would be unable to agree on search terms. Counsel for the parties then agreed that Defendants would complete its ESI review according to its search protocol, and Plaintiff would thereafter determine whether to seek court intervention. *Id.* at 5.

On December 15, 2016, Manalto served its Answers and Objections to Plaintiff's First Set of Interrogatories and Requests for Production. *Id.* at 5. On December 19, 2016, Defense counsel provided to Plaintiff the search terms they intended to use to supplement those Answers with more ESI. *Id.* Utilizing these search terms, counsel began review of potentially

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL - 3

responsive ESI in late December 2016.  *Id.*  Review and production took longer than Defendants anticipated.

Plaintiff filed an initial Motion to Compel on February 2, 2017.  Dkt. #13.  Defendants then quickly wrapped up their review of the ESI in question and produced emails (narrowed by Defendants objections) to Plaintiff on a rolling basis, ending on February 17, 2017.  Accordingly, Plaintiff agreed to withdraw his first Motion to Compel.  Dkt. #16.

After reviewing the produced ESI, Plaintiff discovered certain discrepancies and inadequacies necessitating the instant Motion.  On March 14, 2017, counsel for the parties met and conferred and continued to dispute reasonable ESI search terms.  Dkt. #27 at 7.  On March 24, 2017, Plaintiff filed the instant Motion.

## III.  DISCUSSION

### A. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information within this scope of discovery need not be admissible in evidence to be discoverable.  *Id.*  "District courts have broad discretion in determining relevancy for discovery purposes."  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).  If requested discovery is not answered, the requesting party may move for an order compelling such discovery.  Fed. R. Civ. P. 37(a)(1).  The party that resists discovery has the burden to

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL - 4

show why the discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

**B. Analysis**

According to Mr. Ball, the nature of his suit, including the defense that Mr. Ball was terminated for poor performance, makes relevant "all email message he sent or received." Dkt. #18 at 7. Although Defendants claim to have produced all email messages to or from Mr. Ball, Mr. Ball points to several discrepancies in the production that indicate this is not the case. *See id.* at 8-9. For example, the production only includes "20 email messages to or from Ball from January through July 2016," yet "Ball recalls sending or receiving hundreds of email messages during this period." *Id.* at 8. Mr. Ball asserts that Defendants may not have included "email from Ball's Office365 account." *Id.* Mr. Ball argues that Defendants' objections based on burden should be overruled based on the importance of the ESI at issue, the amount in controversy, Defendants' exclusive access to the ESI, and the comparative resources of the parties. *Id.* at 8-9. Mr. Ball argues that "Manalto's claimed 'burden' on this issue is not a burden of identifying and producing requested information, but rather the 'burden' of analyzing the information for its own case and defenses before it produces it" and that this is not an appropriate consideration in determining whether discovery should be had. *Id.* at 10. Mr. Ball suggests various ways that Defendants could reduce their attorney review costs. *Id.* Mr. Ball asserts that "Courts generally do not allow litigants to both restrict their searches through search terms and manually review the results for 'responsiveness.'" *Id.* at 11-12 (citing *CTB Inc. v. Hog Slat, Inc.*, 2016 WL 1244998, at *14-15 (E.D.N.C., Mar. 23, 2016); *FlowRider Surf, Ltd. v. Pacific Surf Designs, Inc.*, 2016 WL 6522807, at *7-8 (S.D. Cal., Nov. 3, 2016); *Venturedyne, Ltd. v. Carbonyx, Inc.*, 2016 WL 6694946 (N.D. Ind., Nov. 15, 2016).

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL - 5

In Response, Defendants argue that they have already produced "the entirety of Plaintiff's email accounts as they existed on his last day of employment," including Mr. Ball's Office 365 accounts, excluding privileged documents. Dkt. #26 at 9. The only support Defendants offer for this assertion is the declaration of defense counsel Kellie A. Tabor. *See id.* at 7 n.1; Dkt. #27 at 6-7. Defendants argue that Mr. Ball's requests for emails from other custodians are overly burdensome and not proportional to the needs of the case, including documents that merely mention Mr. Ball and documents regarding Monalto's relationship or contracts with ReadySpace, Telstra, Globe Telecom, CenturyLink, Telenor, and SiteDart/Dnet. *Id.* at 9-10. Specifically, Defendants argue that "the issues in this case relate solely to Plaintiff's underperformance, his efforts to procure contracts with select customers, the terms of his commission structure, and the reasons for his termination," and that discovery should be limited to documents that discuss each of the above customer's "addressable market." *Id.* at 10-11. Defendants argue that Mr. Ball grossly inflates the value of his case. *Id.* at 10. Defendants state that Mr. Ball "has not contested the propriety of Manalto's objections to the specific discovery requests at issue." *Id.* at 11.

On Reply, Mr. Ball points to emails that Defendants did produce from "accounts other than Ball's" that should have been produced "in Ball's email account." Dkt. #28 at 2 (citing Dkt. #30 at 2 and Dkt. #30-2). These missing emails indicate to Mr. Ball a failure to adequately search or spoliation. *Id.* at 2-3. Mr. Ball argues that Defendants lack evidentiary support for their claim that they produced all of his emails, which should perhaps cite to declarations "from anyone who preserved, gathered, confirmed, or searched this information, such as Manalto's IT support personnel or consultants…" *Id* at 3. Mr. Ball speculates that Defendants may have failed to preserve or destroyed the ESI in question and requests the Court

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL - 6

order Defendants to explain how it preserved Mr. Ball's Office365 email account and his laptop, and how it searched these sources. *Id*. Mr. Ball reiterates why records related to the companies ReadySpace, Telstra, Globe Telecom, CenturyLink, Telenor, and SiteDart/Dnet are relevant to his claims. *Id*. at 6.

The Court will first address Mr. Ball's email accounts with Manalto. Defendants fail to present any evidence that they have produced all of Mr. Ball's emails. There are no declarations from IT professionals or others personally involved with the maintenance of Mr. Ball's email accounts. Instead, Defendants submit the declaration of attorney Kellie A. Tabor, which does not appear to have been made from personal knowledge.[2] The Court considers this further argument, not evidence. On the other hand, the evidence submitted by Mr. Ball—the comparison of emails produced from different sources, and Mr. Ball's own memory of emails he sent in 2016—is convincing. This is enough to concern the Court, but not enough to conclude that Defendants failed to preserve or destroyed evidence. Accordingly, the Court will order Defendants to provide to Mr. Ball detailed explanations, via declaration, from the persons who searched Manalto's sources of ESI, as set forth below.

With regard to emails or other documents that reference Mr. Ball from the custodians at issue, but were not received or sent by him, the Court concludes that these records could easily contain information relevant to the claims and defenses at issue in this case. Furthermore, the Court agrees with Mr. Ball that Defendants' alleged expense in producing these records could be greatly reduced via the methods proposed by Mr. Ball, *see* Dkt. #18 at 10, and finds that Defendants are lowballing the potential value of this case. In sum, the Court finds these emails and documents are relevant and proportional to the needs of this case and will compel their

---

[2] Ms. Tabor uses the phrase "[a]s I understand it," and "[i]t is my understanding that," to preface discussions of how Monalto maintained Mr. Ball's email accounts, presumably before Ms. Tabor worked on this case. *See* Dkt. #27 at 6.

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL - 7

production. Any concerns over confidentiality are adequately addressed by the Stipulated Protective Order already in place. *See* Dkt. #10.

With regard to unproduced documents regarding Monalto's relationship or contract with the customers Mr. Ball worked with, the Court disagrees with Defendants that "Plaintiff has not contested the propriety of Manalto's objections to the specific discovery requests at issue." These discovery requests are relevant given Mr. Ball's claims and not "disproportionately broad and unduly burdensome" given Mr. Ball's attempts to narrow with appropriate search terms. Any concerns over confidentiality are adequately addressed by the Stipulated Protective Order already in place. *See* Dkt. #10. Defendants have failed to explain to the Court why Mr. Ball's requested search terms are otherwise inappropriate. Accordingly, the Court will compel production with these search terms.

### IV. CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that:

(1) Plaintiff Ball's Motion to Compel (Dkt. #18) is GRANTED.

(2) Defendants must provide to Mr. Ball **no later than ten (10) days from the date of this Order** one or more declarations containing the following:

   a. a detailed explanation from the person(s) who searched Manalto's sources of ESI as to how Manalto determined that it provided "the entirety of Plaintiff's email accounts as they existed on his last day of employment," including whether and when Manalto searched Mr. Ball's Office365 account and laptop.

b. a detailed explanation from the person(s) who took steps to preserve Manalto's sources of ESI, as to the steps that were taken to preserve Mr. Ball's Office365 account and laptop and when they were taken.

(3) Defendants must complete the following production **no later than twenty-one (21) days from the date of this Order** and include a privilege log:

   a. Defendant Manalto is to produce all nonprivileged email and attachments sent or received by Craig Ball, regardless of the hosting source of that email. Such searches are to specifically include the Office365 email account Manalto provided for Craig Ball and the laptop computer Craig Ball returned to Manalto after the end of his employment.

   b. Manalto is to search all email sources with Anthony Owen, Wynn Corliss, and Justin Vianello as custodians, and produce all nonprivileged email and attachments with the term "craig" in the subject or body of the email message or in an attachment.

   c. Manalto is to search all email sources with Anthony Owen, Wynn Corliss, Justin Vianello, Jakob Harrison, and Megan Owen as custodians, and search its Egnyte cloud-based server directory, and produce all nonprivileged ESI matching any of the following terms or search phrases or parameters: Telstra; Telestra; Globe; ReadySpace; Ready w/2 Space; Telenor; Telnor; CenturyLink; Century Link; Dnet; SiteDart; Site w/2 Dart; address* w/5 market; address* w/5 customer; address* w/5 user. In performing these searches, an asterisk (*) represents a wildcard, meaning the search is to include all words that begin with the root "address," and reference to "w/2"

or "w/5" refers to searches finding words within two words of each other or within five words of each other.

(4) Mr. Ball may file a Motion for reasonable expenses incurred in making this Motion, including attorney's fees, no later than **seven (7) days from the date of this Order** and shall note such Motion under Local Rule 7(d).

DATED this 5th day of May 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE